Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy Young (SBN 342891)
cassidy.young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendants
TARGET CORPORATION and
TARGET BRANDS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TARGET CORPORATION, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:23-cv-00640-RGK-MAR<br><br>[Assigned to Hon. R. Gary Klasuner; Magistrate Judge Margo A. Rocconi]<br><br>**DEFENDANTS TARGET CORPORATION AND TARGET BRANDS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; DECLARATIONS OF CHRISTINA N. GOODRICH AND CASSIDY YOUNG IN SUPPORT THEREOF; STATEMENT OF UNCONTROVERTED FACTS; [PROPOSED] JUDGMENT**<br><br>Date:　　December 11, 2023<br>Time:　　9:00 a.m.<br>Place:　　Courtroom 850 |

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 11, 2023, or as soon thereafter as this matter may be heard, in Courtroom 850 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012, Defendants Target Brands, Inc. and Target Corporation (collectively, "Target" or "Defendants") will, and hereby do, move this Court for an Order granting Summary Judgment in favor of Target and against Plaintiff Covves, LLC ("Covves" or "Plaintiff"). Specifically, Target respectfully requests that the Court grant summary judgment in favor of Target on all of Plaintiff's claims on the grounds that: (1) Plaintiff agreed to a full release of claims against Target that precludes this action; and (2) U.S. Patent No. D787,617 (the "'617 Patent") or U.S. Patent No. D783,370 (the "'370 Patent") (collectively, the "Asserted Patents") are unenforceable due to the inequitable conduct through the intentional omission of inventors in the applications for the Asserted Patents. This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on October 27, 2023. The Parties thoroughly discussed the substance and potential resolution of the filed Motion, but were unable to reach a resolution of the issued addressed herein. This Motion is based upon this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Christina Goodrich and Cassidy Young, and the exhibits attached thereto, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.

Dated: November 8, 2023

**K&L GATES LLP**

By: */s/ Christina N. Goodrich*
Christina N. Goodrich
Cassidy T. Young

Attorneys for Defendants Target
Corporation and Target Brands, Inc.

i

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................1

II.  FACTUAL BACKGROUND .................................................................2

   A.   Covves I: Plaintiff sues Target Brands, BigMouth, and Nine other
       Retailers for Infringement of the Asserted Patents. ...................................2

   B.   The Intentional Omission of Inventors of the Asserted Patents ................4

      1.   Design of the Asserted Patents.........................................................4

      2.   Filing History of the '617 Patent......................................................5

      3.   Filing History of the '370 Patent......................................................6

      4.   *BLM Products* Proceeding ..............................................................6

III. LEGAL STANDARD .............................................................................7

IV.  ARGUMENT ...........................................................................................7

   A.   Target is entitled to summary judgment based on the Plaintiff's release
       of Target in the Covves I Settlement Agreement. ...................................7

      1.   The release is enforceable and bars this suit. ...................................8

      2.   Section 3.3 of the Settlement Agreement bars this lawsuit. ...........10

   B.   The Asserted Patents are unenforceable due to inequitable conduct. ....13

V.   CONCLUSION......................................................................................16

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) ...................................................................13

*Akin v. Certain Underwriters at Lloyd's London*,
140 Cal.App.4th 291 (2006) .......................................................................9

*Anand v. BP W. Coast Prod. LLC*,
484 F. Supp. 2d 1086 (C.D. Cal. 2007) ......................................................8

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................7

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
424 F. Supp. 2d 1188 (C.D. Cal. 2006) ......................................................7

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
194 F.3d 1367 (Fed. Cir. 1999) ................................................................11

*Base Media Tech. Grp. Ltd. v. Chase*,
2023 WL 4316782 (C.D. Cal. June 9, 2023)...............................................9

*BLM Products, Ltd. v. Covves, LLC*,
2017 WL 8811269 (C.D. Cal. Oct. 26, 2017) ...........................................16

*BLM Products, Ltd. v. Covves, LLC*,
Case No. 2:17-cv-06224-RGK-PLA (C.D. Cal. 2017) ..................... 6, 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................7

*Classical Silk, Inc. v. Dolan Grp., Inc.*,
2016 WL 7638113 (C.D. Cal. Feb. 2, 2016) .............................................11

*Covves I. State Comp. Ins. Fund v. Dep't of Ins.*,
96 Cal.App.5th 227 (2023) ............................................................*passim*

*Cummings v. Cenergy Int'l Servs., LLC*,
271 F. Supp. 3d 1182 (E.D. Cal. 2017) ....................................................10

iii

---

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ............................................................... 13, 14

*Flowers v. L.R.S. Realty Mgmt., Inc.*,
  2018 WL 11357744 (C.D. Cal. Dec. 4, 2018) .......................................... 12

*Geraghty v. Shalizi*,
  8 Cal.App.5th 593 (2017) ......................................................................... 8

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
  525 F. Supp. 3d 1145 (S.D. Cal. 2021) ..................................................... 15

*Imprenta Servs., Inc. v. Karll*,
  2021 WL 4555333 (C.D. Cal. July 13, 2021) ........................................... 13

*ITN Flix, LLC v. Hinojosa*,
  2015 WL 10376624 (C.D. Cal. May 13, 2015) ......................................... 12

*John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*,
  86 Cal.App.5th 1195 (2022) ..................................................................... 9

*Knight v. Monterey Cnty.*,
  2019 WL 11662415 (N.D. Cal. Sept. 3, 2019) ......................................... 7

*Koenig v. Warner Unified Sch. Dist.*,
  41 Cal.App.5th 43 (2019) ......................................................................... 8

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir. 1993) ............................................................... 15

*Lanard Toys Ltd. v. Dolgencorp LLC*,
  958 F.3d 1337 (Fed. Cir. 2020) ............................................................... 7

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ................................................................... 12

*McKeon v. Giusto*,
  44 Cal. 2d 152 (1955) ............................................................................... 11

*P&P Imports LLC v. Covves, LLC*,
  Case No. 8:17-cv-1616-JVS-KES (C.D. Cal. 2017) ................................. 15

*Segla v. San Diego Unified Sch. Dist.*,
  2021 WL 1377007 (S.D. Cal. Mar. 9, 2021) ............................................ 12

iv

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

*Serius Innovative Accessories, Inc. v. Cabela's Inc.*,
   827 F. Supp.2d 1150 (S.D. Cal. 2011) .................................................... 7

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc) ..................................... 13, 14

*U.A. Loc. 342 Joint Lab.-Mgmt. Comm. v. S. City Refrigeration, Inc.*,
   2010 WL 1293522 (N.D. Cal. Mar. 31, 2010) .................................... 11

*United Farmers Agents Assn., Inc. v. Farmers Grp., Inc.*,
   32 Cal.App.5th 478 (2019) ................................................................. 13

*United States v. William Cramp & Sons Ship & Engine Bldg. Co.*,
   206 U.S. 118 (1907) ........................................................................... 11

*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty
   Co.*,
   50 Cal.4th 913 (2010) .......................................................................... 8

*Yount v. Acuff Rose-Opryland*,
   103 F.3d 830 (9th Cir. 1996) ............................................................ 10

*Zakinov v. Blue Buffalo Pet Prod., Inc.*,
   2018 WL 1426932 (S.D. Cal. Mar. 22, 2018) ...................................... 7

**Statutes**

Cal. Civ. Proc. Code § 1689 ..................................................................... 9

Cal. Civ. Proc. Code § 1691 ..................................................................... 8

Cal. Civ. Code § 1638 ............................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 42(a)(2) ............................................................................ 9

Fed. R. Civ. P. 56(a) ................................................................................. 7

v

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's Complaint is an end-run around its total release of Target on the claims asserted.[1]  This Court presided over a previous action involving the same products and patents at issue here.   Plaintiff, Target, and non-party BigMouth entered into a Settlement Agreement that contained a broad release of Target Brands, its parents (including Target Corporation), and other related entities on the very claims it asserts here.   In exchange, Plaintiff received a promise of a lump sum and royalty payments, waiver of fees and costs, release, and protection against reexamination of its flimsy design patents.   Plaintiff nevertheless brings claims that are plainly barred by that release.   Plaintiff impermissibly attempts to keep the benefits it received under the Settlement Agreement while ignoring the key benefit that Target received from that agreement—the release.   Plaintiff cannot have it both ways—either the Settlement Agreement stands in its entirety, and Plaintiff's remedy is for breach of contract against Big Mouth for its failure to pay all monies owed under the Agreement; or the Settlement Agreement is rescinded, and Plaintiff must return the payment it received and disclaim all benefits under the Agreement, including its protection from reexamination.  Plaintiff has already made clear it believes the Settlement Agreement is still in place.  Thus, the release—which was effective upon execution of that Agreement—bars Plaintiff's claims.

The Asserted Patents are also unenforceable due to inequitable conduct.  Some of the inventors were intentionally omitted from the applications for the Asserted Patents.  For example, it is undisputed that Lois Lo and Tomislav Vuksic made material

---

[1]  The following definitions are used herein: Plaintiff Covves, LLC ("Plaintiff"); Defendants Target Corporation and Target Brands, Inc. ("Target Brands") (collectively, "Target"); BigMouth, Inc. and BigMouth, LLC (collectively, "BigMouth"); U.S. Patent No. D787,617 (the "'617 Patent") and U.S. Patent No. D783,370 (the "'370 Patent") (collectively, "Asserted Patents"); the products Plaintiff accuses of infringing the Asserted Patents are the Unicorn Bev Boat, Glitter Wing Unicorn Pool Float, Unicorn Lil Float, and Unicorn Pride Pool Float (collectively, "Accused Products").

1

contributions to the patent designs, but they were omitted from the applications. In light of the evidence, the single most reasonable explanation for the false representation of inventorship is an intent to deceive the United States Patent and Trademark Office ("PTO"). Indeed, the other alleged inventors of the Asserted Patents—Krepack and Su—intentionally hid Su's own alleged contribution to one of the Asserted Patents. Krepack and Su agreed that Krepack would be credited with the design of the Asserted Patents, while Su would be in charge of running the "business" related to the patents— i.e., targeting other pool float retailers and threatening to sue them unless they agreed to pay Plaintiff royalties. This action is part of Plaintiff's larger scheme to profit from these patents at the expense of two of their key inventors—who, according to testimony from Krepack and Su, did not receive compensation for their assignment of the rights of the Asserted Patents to Plaintiff. As such, Plaintiff's claims fail for this additional reason.

## II.   FACTUAL BACKGROUND

### A.   *Covves I*: Plaintiff sues Target Brands, BigMouth, and Nine other Retailers for Infringement of the Asserted Patents.

In 2018, Plaintiff initiated an action against Target Brands, BigMouth, and nine large retailers who sold BigMouth's products alleging infringement of the Asserted Patents ("*Covves I*"). SF 2. Thereafter, Plaintiff removed claims against BigMouth and reasserted them in a separate action in Indiana (the "Indiana Action"). Goodrich Decl. ¶ 4, Ex. 3. Covves, BigMouth, and Target Brands eventually settled both *Covves I* and the Indiana Action, executing a settlement agreement in January 2020 ("Settlement Agreement") that included a general release. SF 3. Benson Su, Plaintiff's president, signed the Agreement with full authority to do so on behalf of Plaintiff. SF 4.

The release in the Settlement Agreement provides:

In consideration of the full and faithful performance of the terms and conditions of this Agreement, Covves and Plaintiff's successors in interest, predecessors, heirs and assigns, *release* Defendants [defined as BigMouth,

2

Dillard's, Inc., Kohl's Corporation, Saks & Company LLC, Target Brands, Inc., Express, Inc., Tilly's Inc., Nordstrom, Inc., West Marine, Inc., and Zulily, Inc.] and *its* present and former affiliates, *parents*, insurers, subsidiaries, predecessors, successors and assigns and all their respective shareholders, partners, members, directors, officers, employees, agents, attorneys, and all of its retailers, distributors, or any other entity in that has distributed or manufactured the Accused Products [defined as including the Unicorn Bev Boat, Glitter Wing Unicorn Pool Float, Unicorn Lil Float, and Unicorn Pride Pool Float] *from any and all claims, demands, causes of action, losses and liabilities in law or in equity, past or present*, which Covves (or its heirs, executors, administrators, successors or assigns) has, as of January 8, 2020] *relating to the Accused Products*.

SF 5 (emphasis added).  The release therefore applies to claims against both Target Brands, Inc. and Target Corporation (the parent of Target Brands) and to all of Plaintiff's claims in this action, which assert infringement of the Accused Products.  SF 1, 6.

In exchange for Plaintiff's release, Target released any claims it had against Plaintiff related to the Accused Products, the Asserted Patents, or the claims alleged in *Covves I* and the Indiana Action.  Goodrich Decl. ¶ 6, Ex. 5 § 2.2.  Target also agreed to waive the right to seek its attorneys' fees and costs "associated with" *Covves I*.  *Id.* § 2.3.  Target further agreed that it would not challenge the validity of the Asserted Patents in reexamination proceedings.  *Id.* § 2.4.  The Agreement also provided that BigMouth would pay the settlement amount and a 3% royalty on sales made after June 1, 2020 to Plaintiff—Target did not agree to pay Plaintiff any sum or guaranty BigMouth's payment.  SF 7.

Plaintiff received a $400,000 payment from BigMouth pursuant to the Settlement Agreement.  SF 8.  The Settlement Agreement provided that, if BigMouth is more than 30 days late on one of its payments, then Plaintiff "may choose to reinstate and reopen [*Covves I*] and the Indiana Action, including any and all claims and requests for

3

damages." SF 9.   Around May 2020, BigMouth entered a receivership and was unable to make the additional payments under the Settlement Agreement.  Goodrich Decl. ¶ 26, Ex. 25.  Plaintiff sought to reopen *Covves I*, but the Court denied Plaintiff's motion because it did not retain jurisdiction to enforce the Settlement Agreement.  *Id.* ¶ 9, Ex. 8.  Plaintiff moved for reconsideration, which was denied.  *Id.* ¶ 10, Ex. 9.  Plaintiff appealed and the Ninth Circuit affirmed.  *Id.*  Plaintiff then commenced this action for infringement of the same patents, accusing the same products as in *Covves I*—namely, the Glitter Wing Unicorn Pool Float, the Unicorn Lil Float, the Unicorn Pride Float, and the Unicorn Bev Boat.  SF 1.  Plaintiff named Target Corporation as a defendant, in addition to Target Brands.[2]  DE 1.

Plaintiff has never given notice of rescission of the Settlement Agreement nor offered to return the $400,000 payment it received.  SF 10.  Plaintiff has not argued that the Settlement Agreement is no longer valid or enforceable or that Target has breached the Agreement.  SF 11.  Indeed, Plaintiff has actually continued to assert that the Settlement Agreement is still in place and has threatened to sue Target for breach of that agreement if Target initiates reexamination of the Asserted Patents.  *Id.*  Thus, the Settlement Agreement remains valid, enforceable, and in effect.  *Id.*

**B.**     **The Intentional Omission of Inventors of the Asserted Patents**

**1.**     **Design of the Asserted Patents**

Adam Krepack is a corporate attorney with no art or design training who at some point consulted on matters for Plaintiff.  Goodrich Decl., Ex. 10 at 13:6–18; Ex. 23 at 92:15–93:11.  While Krepack asserts that he "came up with the idea" for a unicorn pool float design, he could not confirm that he ever drew any design that was incorporated into either of the Asserted Patents.  SF 12.  Krepack worked on the design with Benson Su (Plaintiff's president), whom Krepack was friends with since college.  Ex. 10 at

---

[2] Plaintiff has argued successfully to this Court that Target Corporation is in privity with Target Brands such that Target Corporation is precluded from relitigating invalidity that was decided in *Covves I*.  DE 35.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

14:19–20; Ex. 23 at 57:24–25.  Together, Krepack and Su decided that Su would be in charge of "running the business" associated with the patents.  SF 14.  This meant locating other businesses that sold unicorn-shaped pool floats and threatening to sue them for infringement.  Goodrich Decl. ¶ 12, Ex. 11.  Indeed, on March 28, 2017, Su sent an email to Krepack stating in part:  "Yo bitch are we having dinner tomorrow or not?  I'm leaving the night of April 4th.  Also, gonna start going after the copy cats for the Unicorn design.  Can you please sign the transfer over to the LLC so that we can start going after the damn Chinese copies."  *Id.*

Lois Lo, Su's cousin, made significant contributions to the design of both Asserted Patents.  SF 15.  When these designs were being developed, Su regarded Lo as a "better drawer than him."  SF 16.  Unlike Su, Lo had formal design training from NYU art school.  *Id.*  Lo was never paid for her contributions to either unicorn float design.  SF 17.

Plaintiff hired Tomislav Vuksic to perform freelance design work related to the unicorn pool float designs.  SF 18.  Vuksic authored many of the drawings leading to the Asserted Patents.  SF 19.  However, Su does not remember paying Vuksic in exchange for his assignment of the rights to either patent to Plaintiff.  SF 20.  At most, Vuksic received "a couple thousand" dollars for his design services in total.  Ex. 12 at 211:8–17.

## 2.   Filing History of the '617 Patent

Krepack filed the application for the '617 Patent with the PTO on August 24, 2015.  SF 21.  Despite Krepack's lack of design training and knowledge that Vuksic and Lo had contributed significantly to the design of the Asserted Patents, he was named the *sole inventor* of the '617 Patent.  Goodrich Decl. ¶ 14, Ex. 13.  It was not until September 18, 2018 that Su, Lo, and Vuksic were named as inventors via a Request for Correction filed with the PTO.  SF 23.  Plaintiff initiated *Covves I* against Target and BigMouth just two weeks later.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

### 3.     Filing History of the '370 Patent

On November 8, 2016, Krepack and Su filed the application for the '370 Patent, naming themselves as the ***sole inventors*** of the '370 Patent.  SF 24.  However, on September 10, 2018—over three months after the Request for Correction for the '617 Patent was filed—Krepack and Su filed another Request for Correction, naming Lo and Vuksic as inventors of this patent as well.  SF 25.   When asked about the decision to correct the inventorship record for these patents, Krepack stated that he decided to add these individuals as inventors "to be cautious" after speaking with his lawyer.  Ex. 10 at 56:23–57:3.

### 4.     ***BLM Products*** Proceeding

The timing of the corrections was anything but coincidental.  The corrections were filed on the heels of inequitable conduct allegations related to inventorship of the Asserted Patents in a separate action.

Specifically, on August 22, 2017, BLM Products, Ltd. ("BLM") sued Plaintiff for declaratory judgment that the Asserted Patents were invalid and that Plaintiff had engaged in inequitable conduct by submitting false statements about inventorship of the Asserted Patents.  SF 26.  According to BLM, after receiving an infringement notice from Plaintiff related to the '617 Patent, BLM's president reviewed the '617 Patent and "immediately suspected the claimed design was not from a U.S. inventor based on his experience sourcing similar inflatables from Chinese manufacturers."   SF 27.  Accordingly, BLM identified the original manufacturer of Plaintiff's float as FTF Zhenhan Inflatable Co., Ltd. ("FTF"), and contacted FTF to request more information. *Id.*  FTF then confirmed that Plaintiff's unicorn float was designed in FTF's factory by a woman named "Lisa," who had over 18 years' experience designing inflatable products. *Id.*  This Court ordered that BLM had stated a claim for inequitable conduct, concluding:  "[I]t would be 'peculiar' for Krepack to claim to be the 'sole inventor' of the D617 Patent if he did not invent it at all . . . .  Instead, a more reasonable inference is that Krepack did know when he signed the inventorship declaration that he did not

6

invent the D617 Patent, but claimed to be the inventor anyway in an effort to deceive the PTO."  SF 28.

Around the same time that the inventorship of the Asserted Patents was "corrected," Lo and Vuksic assigned their interest to Plaintiff in exchange for no compensation.  Goodrich Decl. ¶¶ 22–23, Exs. 21–22.

### III.   LEGAL STANDARD

Summary judgment is often granted in design patent cases.  *See, e.g.*, *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1345 (Fed. Cir. 2020) (affirming grant of summary judgment of non-infringement in design patent case); *Serius Innovative Accessories, Inc. v. Cabela's Inc.*, 827 F. Supp.2d 1150 (S.D. Cal. 2011) (granting summary judgment in design patent case); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 424 F. Supp. 2d 1188 (C.D. Cal. 2006) (same).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The burden then shifts to the nonmoving party to establish that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### IV.   ARGUMENT

### A.   Target is entitled to summary judgment based on the Plaintiff's release of Target in the *Covves I* Settlement Agreement.

Plaintiff released the claims it now asserts against Target.  Summary judgment is proper where a defendant can show a release bars the plaintiff's claims.  *Knight v. Monterey Cnty.*, 2019 WL 11662415, at *2–4 (N.D. Cal. Sept. 3, 2019) (granting summary judgment based on release).  A plaintiff who executes a broad release may not initiate a new lawsuit against the defendant without "unraveling the settlement and in essence rendering all of its claims moot." *Zakinov v. Blue Buffalo Pet Prod., Inc.*, 2018 WL 1426932, at *5 (S.D. Cal. Mar. 22, 2018).  Such is the case here.

7

The Settlement Agreement expressly releases Target Brands and its parent (Target Corporation) from any liability for infringement of the Asserted Patents based on the Accused Products, which are the same as those accused in *Covves I*. SF 1. Thus, the release bars Plaintiff's claims.

### 1.  The release is enforceable and bars this suit.

Plaintiff cannot unilaterally and selectively unwind portions of the Agreement, while attempting to enforce others.[3] Target has not breached any obligations under the Settlement Agreement, and Plaintiff does not contend otherwise. SF 11. A party who enters into a valid agreement containing a release is bound by that agreement unless the party can prove that a basis for rescission exists. *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.*, 50 Cal.4th 913, 923 (2010). Even if a basis for rescission exists, a party cannot rescind an agreement without also returning all benefits it received under the agreement to the other side. *See* Cal. Civ. Proc. Code § 1691.[4] As such, a party who seeks to avoid its obligations under a contract can attempt to "*either* rescind the contract and restore the consideration, or . . . affirm the contract and recover damages for fraud.*" *Village Northridge*, 50 Cal.4th at 923 (emphasis added).

Plaintiff had a choice when BigMouth failed to make the entire the settlement payment: (1) sue BigMouth for breach, ***or*** (2) rescind the agreement as to BigMouth (assuming it had grounds), return the settlement funds, and renew its claims against BigMouth. Plaintiff's attempt to simultaneously stand on certain provisions of the Settlement Agreement while ignoring its release of Target is impermissible under California law.[5] Rescission is only permitted on narrow grounds not present here—

---

[3] Plaintiff produced the Settlement Agreement—it cannot contest its authenticity. *See Anand v. BP W. Coast Prod. LLC*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007). Mr. Su also authenticated the Agreement. *See* Ex. 12 at 111:18–112:23.

[4] California law governs the Settlement Agreement. *See* Ex. 5, § 6.3.

[5] *See Village Northridge Homeowners Assn.*, 50 Cal.4th at 923; *Koenig v. Warner Unified Sch. Dist.*, 41 Cal.App.5th 43, 60–61 (2019) (plaintiff not entitled to payment under agreement where failed to perform); *Geraghty v. Shalizi*, 8 Cal.App.5th 593, 597–99 (2017) (not entitled to rescission of release where did not offer to restore payment received under agreement).

8

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

indeed, Plaintiff does not even seek rescission in its Complaint.  Cal. Civ. Proc. Code § 1689; *Base Media Tech. Grp. Ltd. v. Chase*, 2023 WL 4316782, at *8 (C.D. Cal. June 9, 2023) (declining to consider rescission where plaintiff did not expressly seek that remedy).  Absent rescission, the Settlement Agreement and its release is in full force as to Target and bars this action.

Nonetheless, Plaintiff is using this action as a way to unwind the Settlement Agreement and turn Target into the de facto indemnitor of Big Mouth's payment obligations.  The law does not permit Plaintiff to do this.  Because Plaintiff has accepted benefits under the Settlement Agreement, it is bound by all of its terms, including the release. *See Akin v. Certain Underwriters at Lloyd's London*, 140 Cal.App.4th 291, 296 (2006) (election of pursuing breach or rescission precludes pursuit of the other).  Plaintiff did pursue Big Mouth for breach by sending a default letter and pursuing payment in the receivership proceedings.  Goodrich Decl. ¶ 28, Ex. 27.  That conduct affirmed the contract.  Plaintiff is now stuck with the consequences—the release of Target.

Allowing Plaintiff to both retain its benefits but ignore the release would eliminate Target's consideration under the Agreement.  *John's Grill, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, 86 Cal.App.5th 1195, 1219 (2022) (courts should avoid contract interpretations that would render them illusory or lacking in consideration).  The promise of a release was material to Target's decision to enter into the Settlement Agreement and was, indeed, ***the key benefit*** that Target received thereunder.  In exchange, Target made valuable concessions on which it has fully performed.  Namely, Target has refrained from: (1) seeking fees and costs associated with *Covves I* (*see* Settlement Agreement § 2.3); and (2) filing a petition for IPR or reexamination of the Asserted Patents (*see* Settlement Agreement § 2.4).  The former promise is important because Target could have sought costs due to the dismissal of the action without prejudice but for Target's agreement to the contrary.  Fed. R. Civ. P. 42(a)(2).  Target cannot now clawback this promise because there is no mechanism for it to seek costs now in *Covves I*.  *State Comp. Ins. Fund v. Dep't of Ins.*, 96 Cal.App.5th 227 (2023) (contract cannot be interpreted in

a way that would grant no benefit to a contracting party).  The latter promise is similarly powerful—without this provision, Target could have invalidated Plaintiff's patents years ago, thereby avoiding this suit altogether.

Plaintiff cannot disavow the release while attempting to enforce the provisions that burden Target and benefit Plaintiff.  *See* Civ. Code § 1638.  It is clear from the face of the Settlement Agreement that Target expected the full release to be enforced, and the Agreement must be interpreted as such.  *See Cummings v. Cenergy Int'l Servs., LLC*, 271 F. Supp. 3d 1182, 1188 (E.D. Cal. 2017) (citing Cal. Civ. Code § 1636) ("The central goal of contract interpretation is to give effect to the parties' intent as it existed at the time of contracting.").

### 2. <u>Section 3.3 of the Settlement Agreement bars this lawsuit.</u>

Section 3.3 of the Settlement Agreement provides: "If, after written notice of default, BigMouth is more than 30 days late on its Initial Payment or any one of its Six Quarterly Payments, then Covves, at its option, may choose to reinstate and reopen the California Action and Indiana Action, including any and all claims and requests for damages."  Ex. 5.  This provision grants a limited remedy to Plaintiff in the event of BigMouth's default—it may ***reinstate*** and ***reopen*** *Covves I*.  This provision does not, however, invalidate Plaintiff's release of Target nor does it grant Plaintiff permission to initiate an entirely new lawsuit against only Target.  Plaintiff's release of Target became effective upon execution of the Settlement Agreement and was not contingent on BigMouth's full payment of the settlement amount.  If Plaintiff desired to make its release effective only upon full payment by BigMouth, it could have done so.[6]  It did not.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) (quoting Cal.

---

[6] BigMouth indemnified Target Brands and the other defendants in *Covves I*, so Plaintiff always knew that BigMouth would be the source of any money it received.  Ex. 7 ¶ 3.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Civ. Code § 1636). "To ascertain the parties' intent, the Court must start with the language of the contract itself," and if that language is "clear and explicit, it governs." *Classical Silk, Inc. v. Dolan Grp., Inc.*, 2016 WL 7638113, at *4 (C.D. Cal. Feb. 2, 2016) (citation omitted).

"[I]t is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement of agreement. The Supreme Court stated in *Cramp* that 'general language . . . indicates an intent to make an ending of every matter arising under or by virtue of the contract. If the parties intend to leave some things open and unsettled, their intent so to do should be made manifest.'" *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir. 1999) (quoting *United States v. William Cramp & Sons Ship & Engine Bldg. Co.,* 206 U.S. 118, 128 (1907)). Consistent with *Augustine*, courts narrowly construe reservation of rights contained in settlement agreements. *See, e.g.*, *U.A. Loc. 342 Joint Lab.-Mgmt. Comm. v. S. City Refrigeration, Inc.*, 2010 WL 1293522, at *3 (N.D. Cal. Mar. 31, 2010) (distinguishing between defendant's agreement to pay entire damages amount and plaintiff's right to "seek repayment" of that amount, which is all that defendant agreed to). In addition, written agreements and the provisions therein take immediate effect unless the agreement specifies otherwise. *McKeon v. Giusto*, 44 Cal. 2d 152, 158 (1955).

The Settlement Agreement's language is clear and explicit—Plaintiff granted a broad release to Target from any liability associated with its underlying claims that became ***effective upon execution*** of the Settlement Agreement. SF 5. In exchange, Target agreed to release any claims it had against Plaintiff related to the Asserted Patents. Ex. 5, §§ 2.2–2.4. BigMouth's subsequent failure to pay the full settlement amount has no effect on the enforceability of the release. Section 2 of the Settlement Agreement—which contains the release—contains no language specifically conditioning Plaintiff's release of claims against Target on BigMouth's payment of the settlement amount. Thus, Plaintiff cannot rely on ***BigMouth's default*** to argue that the

release *of Target* is invalid.  *See, e.g.*, *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) ( "exceptionally broad" release language barred any and all claims within its scope); *Segla v. San Diego Unified Sch. Dist.*, 2021 WL 1377007, at *4 (S.D. Cal. Mar. 9, 2021) (absent limiting or conditional language, broad release barred all claims within its scope).

Courts have continued to enforce releases despite default where a third party is responsible for payment under the settlement agreement.  *See, e.g.*, *Flowers v. L.R.S. Realty Mgmt., Inc.*, 2018 WL 11357744, at *2–3 (C.D. Cal. Dec. 4, 2018) (declining to vacate voluntary dismissal of defendant where not clear defendant had payment obligation where agreement stated third party had payment responsibility).  The same should be true here.

In the event BigMouth defaulted on its payments under the Settlement Agreement, Plaintiff reserved the right to "reinstate and reopen" *Covves I*.  But reopening an already existing lawsuit—which had proceeded through nearly every litigation stage and was largely ready for trial—is different from bringing an entirely new lawsuit.  First, this action involves different parties than *Covves I*—with all defendants except Target Brands removed and with Target Corporation added as a defendant.  Second, starting at the beginning with a new action has caused Target to incur significantly more expense than it would have if the prior litigation had simply picked up where it left off.

If Plaintiff wanted to reserve the right to bring a new lawsuit if it were unable to reopen *Covves I* upon BigMouth's default, it could have done so.   Plaintiff bore the burden to ensure that it expressly maintained the right to initiate a new lawsuit against Target and that its right to reopen *Covves I* was enforceable.  *ITN Flix, LLC v. Hinojosa*, 2015 WL 10376624 (C.D. Cal. May 13, 2015).  This, it did not do.

Other provisions of the Settlement Agreement evidence the parties' intent for Section 3.3 to limit Plaintiff's remedy to reopening *Covves I* and not initiating a new lawsuit. For example, Section 6.4 states that, in the event of BigMouth's breach, "Covves may enjoin and restrain BigMouth from violation or continued violation of said

covenant or assurance."   Ex. 5.   Plaintiff specifically reserved the right to pursue an action for injunctive relief against **only BigMouth** in the event of BigMouth's breach. If Section 3.3 permitted Plaintiff to initiate an entirely new lawsuit against any party in the event of a breach, then there would be no need for this provision.   The Agreement cannot be interpreted to render Section 3.3 meaningless.   *United Farmers Agents Assn., Inc. v. Farmers Grp., Inc.*, 32 Cal.App.5th 478, 495 (2019).

Thus, the release bars Plaintiff's claims.

### B.     The Asserted Patents are unenforceable due to inequitable conduct.

False statements were made to the PTO in connection with procuring the Asserted Patents.   It is undisputed that key inventors were knowingly excluded from the original list of named inventors for both the '617 Patent and the '370 Patent.   The reason for these misrepresentations is clear from the testimony of both Adam Krepack and Benson Su—they wanted the credit for and the benefits flowing from the invention of these patents for themselves.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."   *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).   A finding of inequitable conduct as to "any single claim renders the entire patent unenforceable."   *Id.* at 1288.   The elements of a claim for "inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO."   *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

Inventorship is a "critical requirement for obtaining a patent," so false statements about the inventorship are material.   *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,* 607 F.3d 817, 828 (Fed. Cir. 2010); *see also Imprenta Servs., Inc. v. Karll*, 2021 WL 4555333, at *3 (C.D. Cal. July 13, 2021).

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

This element is easily satisfied.  When Krepack filed the application for the '617 Patent, and when Krepack and Su filed the application for the '370 Patent, they intentionally omitted material information—the complete list of all inventors.  The falsity of these inventorship representations is evidenced by the fact that Notices of Correction were later filed with the PTO adding the additional inventors to each patent. SF 23, 25.  Thus, Krepack and Su's original inventorship representations to the PTO were both material and false.

As for intent, "[t]he specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290. Specific intent requires that "the specific individual 1) knew of the withheld material information or of the falsity of the material misrepresentation; and 2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen,* 575 F.3d at 1328. Clearly, Krepack was aware of the fact that he was not the sole inventor of the patent— he did not complete the invention from start to finish all by himself.  SF 15, 19.

Krepack and Su's specific intent to deceive the PTO is the single most reasonable explanation for their failure to name Lo and Vuksic as inventors.  Su was aware of the valuable contributions made by Lo and Vuksic to the design of the Asserted Patents. Indeed, Su stated that the designs "would not be where it is if it wasn't for the contribution of everyone.  Specifically, Adam, Lois, Tomislav, myself."  Ex. 12 at 247:12–14.  Su's testimony further demonstrates the motive behind the deception— Krepack and Su wanted to reap the benefits of Lo and Vuksic's creative design skills while avoiding the obligation of having to pay them for their contributions.

Su elicited his cousin's help with designing the unicorn floats at issue, knowing that she had superior design skills and would not ask to be paid anything in return.  *Id.* at 20:19–21.  Indeed, Su could not confirm that Lo was ever paid for her contributions to either unicorn float design.  *Id.* at 50:22–51:1.

As for Vuksic, Plaintiff hired him to do freelance design work, and Su acknowledged that Vuksic was the author of many of the drawings on which the

14

Asserted Patents were based.  *Id.* at 114:16–20; 116:22–117:13 (listing drawings authored by Vuksic that were provided to Su's patent attorney).  However, Vuksic received only "a couple thousand" for his design services in total and Su could not confirm that Vuksic was ever paid for his assignment.  *Id.* at 211:8–23.

As acknowledged by Krepack, Su "took the idea and design" for the unicorn float and "got it turned into the end product and did everything else involved with that in running the business."  *Id.* at 53:10–15.  While Krepack stated that the first "idea" for the unicorn float design was his, he was not the author of the drawings that were eventually patented and was not sure he ever drew any design that was at all related to the design patents.  *Id.* at 55:4–25.  He only later decided—notably, only a few weeks before Plaintiff initiated *Covves I*—to add the actual authors of the drawings "to be cautious."  *Id.* at 56:23–57:3.  This argument is nonsensical, given that Krepack knew he was not the author of the design, and therefore could not have been the sole inventor of the Asserted Patents.  *See, e.g., Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.,* 525 F. Supp. 3d 1145, 1181 (S.D. Cal. 2021) ("Design patents protect the visual impression—or "ornamentality" of a product—by rewarding inventors who develop innovative products."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("A design patent is directed to the appearance of an article of manufacture.").

The deceptive intent behind the misrepresentation here is further evidenced by Su's motivation for obtaining these patents in the first place—to attempt to monopolize the pool float market and force other sellers of pool floats to pay royalties to Plaintiff. *See, e.g.,* Ex. 11; *see also BLM Products, Ltd. v. Covves, LLC,* Case No. 2:17-cv-06224-RGK-PLA (C.D. Cal. 2017); *P&P Imports LLC v. Covves, LLC,* Case No. 8:17-cv-1616-JVS-KES (C.D. Cal. 2017).  Thus, the single most reasonable explanation for the failure to name two individuals who contributed significantly to the designs is that they did not want to share any portion of the royalties they received with them.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

1    In addition, this Court has already acknowledged the plausibility of allegations

2  setting forth Plaintiff's inequitable conduct for failing to name additional inventors *BLM*

3  *Products, Ltd. v. Covves, LLC*, 2017 WL 8811269, at *5 (C.D. Cal. Oct. 26, 2017).

4  BLM's investigation into the inventorship of the '617 Patent, as well as Krepack and

5  Su's lack of experience in product design, are evidence that even more inventors exist

6  for the Asserted Patents that are not currently named.  Any evidence to the contrary does

7  not entitle Plaintiff to summary judgment on this issue.[7]

8    Thus, the Asserted Patents are unenforceable.

9  **V.    CONCLUSION**

10    In light of the foregoing, the Court should grant Target's Motion.

11  Dated: November 8, 2023            **K&L GATES LLP**

12

13

14                                     By: */s/ Christina N. Goodrich*
                                       Christina N. Goodrich
15                                     Cassidy T. Young

16                                     Attorneys for Defendants Target
                                       Corporation and Target Brands, Inc.

17

18

19

20

21

22

23

24

25  _____

26  [7] While Plaintiff previously submitted a declaration from FTF Zhenhan's General
    Manager to refute BLM's allegations, this declaration does not refute these claims
27  because the General Manager lacks personal knowledge as to Lisa's involvement with
    Plaintiff's design of the Asserted Patents.  Goodrich Decl. ¶ 27, Ex. 26.  The declaration
28  does not state that the General Manager spoke with Lisa regarding the claims or how the
    General Manager knows BLM's claims are false.  *Id.*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Entropic Communications, LCC, certifies that this brief contains 5,515 words, which complies with the word limit of L.R. 11-6.1 and this Court's Standing Order.

Dated: November 8, 2023

**K&L GATES LLP**

By: */s/ Christina N. Goodrich*
Christina N. Goodrich
Cassidy T. Young

Attorneys for Defendants Target
Corporation and Target Brands, Inc.

17

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT**